Richards, J.
The defendant issued to the plaintiff a policy to indemnify it to the extent of $5,000 against loss by reason of liability which might be imposed by law upon plaintiff if any of its employes should accidentally suffer bodily injuries while employed in plaintiff’s factory, and within the provisions of the policy. During the term of the policy one of plaintiff’s employes, named Joe Fogach, was injured, which injuries were accidentally suffered and were alleged to have been suffered through the negligence of the plaintiff herein while Fogach was such employe in plaintiff’s factory. The policy of indemnity provided as follows:
“G. Except as herein elsewhere provided for, the assured shall not voluntarily assume any *346 liability, settle any claim, or incur any expense except at his own costs, or interfere in any negotiation for settlement or legal proceeding without the consent of the corporation previously given in writing.
“L No action shall lie against the corporation to recover for any loss under this policy unless it shall be brought by the assured for loss actually sustained and paid by him in money in satisfaction of a judgment after trial of the issue.”
An action was brought by Fogach against his employers to recover for the injury suffered by him, and while it was pending negotiations for settlement occurred. The case was not settled, but proceeded to trial, and resulted in a verdict and judgment in favor of Fogach in the sum of $20,000, which amount was paid by The Cleveland Wire Spring Company, plaintiff in this case.
The petition in the present action contains three causes of action, the first cause being based on the policy, to recover the amount thereof, to-wit, $5,000. The second cause of action is based upon a clause in the policy rendering the indemnity company liable for immediate and imperative medical and surgical relief, and is for $49.75. These two causes of action have been adjudicated in favor of the plaintiff in this case and are not involved in the controversy now pending between the parties.
The third cause of action was met by a demurrer, filed by the defendant, which demurrer was sustained, and final judgment on that cause of action rendered against the plaintiff.
*347 It is averred, in substance, in the third cause of action, that after the original action to recover damages for personal injury was brought against this plaintiff, the indemnity company undertook to and did defend the same in the name of this plaintiff, and advised plaintiff that it had made .every effort to settle with Joe Fogach for a reasonable amount but was unsuccessful; that the least amount that it was able to settle for was far in excess of the amount of the policy limit; and that if the case proceeded to trial there was a strong probability of a verdict being rendered in excess of the amount of $5,000,. and it therefore advised plaintiff to consult its own private counsel as to the best manner of handling the case.
The petition further averred that this plaintiff did employ counsel, and negotiated with said Joe Fogach and his attorneys for the purpose of settling the claim, and as a result of such negotiations obtained a proposition of settlement in the sum of $7,500; that it communicated the offer of settlement to the indemnity company and agreed to pay, in order to effect the settlement, an amount equal to the difference between $7,500 and the amount of the maximum liability of $5,000 stipulated in the policy to be paid by the indemnity company.
The petition further averred that the indemnity company thereupon stated to plaintiff that it would not pay in settlement any sum of money in excess of $3,500, and that if settlement was to be made, this plaintiff must pay the difference between said amount of $3,500 and the amount of the proposed settlement, $7,500. The plaintiff averred that the *348 indemnity company represented to it that there was urgent necessity of settling the case as the conditions were such that a verdict of $10,000 or more would in all probability be rendered against it in the suit brought by Joe Fogach; and the plaintiff claimed that these facts constitute a breach of good faith on the part of the indemnity company in the performance of its contract. Plaintiff prayed for judgment on this third cause of action in the sum of $12,500, being the difference between the amount paid by it in satisfaction of the judgment and the amount for which the case could have been settled.
The theory of the plaintiff in this action is that the indemnity company impliedly agreed to exercise good faith in its conduct under the contract of indemnify, and that having, as plaintiff claims, failed so to do, it is liable in tort for the damages proximately resulting therefrom. We are quite in accord with the plaintiff’s contention that the duty rested upon the indemnity company to exercise good faith under the contract relations existing between the parties, and it will become necessary to recur to the averments of the third cause of action to ascertain whether they do set forth such facts as may amount to a charge of bad faith.
The contract of indemnity rendered the company liable only for loss actually suffered and paid by the assured in satisfaction of a judgment after trial of the issue. It, of course, can not be contended that liability arose, by virtue of the provisions of the policy, in excess of the maximum amount of $5-,000 specified therein, and for im *349 mediate imperative medical and surgical relief; and no liability for any amount arose under the contract of indemnity until after judgment had been rendered against the assured and the same had been satisfied by it. The pleading avers that the indemnity company stated that there was a “strong probability of a verdict being rendered in excess of the policy limits,” and that “a verdict of ten thousand dollars or more would in all probability be rendered against this plaintiff as defendant in the suit of Joe Fogach.” It will be noticed that the' averments do not show that the indemnity company was admitting its liability to pay the full amount of its policy by reason of the injury to Fogach, but only that there was a strong probability of a large verdict and that a verdict of $10,000 or more would in all probability be rendered. The pleading nowhere shows the extent of the injuries to Fogach, nor the manner in which they were received. It is a fair inference from the averments that the prosecution of the case was attended with the uncertainty usually met with in actions by employes to recover for personal injury, the strong probabilities being, in this case, as averred in the petition, in favor of the recovery of a large sum.
The indemnity company, however, had the right, to estimate and value that probability. It might well take the position, that, while the verdict would probably be in excess of the amount of its policy, it might not be so; and it had the right, under the terms of the policy, to require that the action should be litigated in order to definitely settle and determine the amount of the liability, if any. Evi *350 dently, under the averments of the third cause of action, it valued this right at $1,500, and, in so valuing it, and in declining to pay an amount in excess of $3,500 by way of settlement, the petition contains no averments of fact showing bad faith. Looking at the result finally reached it would have exercised better judgment by offering.to pay a larger sum than $3,500, but this is far from saying that in what it did do it was in any wise guilty of bad faith. It is perfectly clear, under the language of the policy, that the indemnity company might have stood on its contractual rights and declined to offer the payment of any sum by way of settlement in advance of the trial.
The precise question under consideration does not appear to have been determined in very many reported cases, but the principles determining liability in such cases have been announced in some very respectable authorities.
Schmidt v. Travelers Insurance Co., 244 Pa. St., 286, was a case in which under an indemnity policy of $5,000 settlement could have been effected for $6,000, the assured offering to contribute $1,000 to the amount and requesting the indemnity company to make settlement, which was refused. The trial resulted in a verdict and judgment for $9,200. It is true that the report of this case does not show that bad faith was specifically charged against the indemnity company, as is claimed to be charged in the petition in the instant case; but the petition in the case cited did set forth the facts already stated, and the only difference of importance between that case and the case now under consideration is that in this case the defendant *351 company admitted, there was strong probability that a verdict would be rendered f'or a sum largely in excess of the face of the policy. In the opinion of this court the averments in this regard do not distinguish the case from the authority just cited.
Brown & McCabe, Stevedores, Inc., v. London Guarantee & Accident Co., 232 Fed. Rep., 298, is another case shedding much light on the question under consideration. In that case the report shows that the indemnity company recognized its liability, and this fact distinguishes it from one in which the averment is only that there is strong probability of a verdict being rendered in excess of the amount of the policy. The court, in the case last cited, uses this language in the course of the opinion:
“It has been held that, under a policy like the one in question, the insurance company has a right to settle with an injured employe or not, as it deems advisable, and if it neglects or refuses to do so, and litigates the matter in good faith, and judgment is recovered for more than the face of the policy, it is not liable for the excess.”
While announcing the rule as above státed, it held that the case was not within its terms, because it appeared to be an attempted hold-up of the assured. The averments in the case at bar do not show that the indemnity company undertook to hold up the assured, nor that it exercised bad faith, but rather that the parties were all negotiating in an attempt to make such a settlement as would be advantageous to all parties concerned.
*352 An authority on which much reliance is placed by the plaintiff is Wisconsin Zinc Co. v. Fidelity & Deposit Company of Maryland, 162 Wis., 39, 155 N. W. Rep., 1081. In that case the court held that no duty to exercise ordinary care was enjoined upon the indemnity company by the terms of the policy, and determined that the first and second causes of action were insufficient. The third cause of action was held to set forth a good cause of action because the court, as it construed the averments thereof, reached the conclusion that it did in fact charge the indemnity company with failing to exercise good faith. We are entirely in accord with the holding in that case. The indemnity company had the right, as was there said, to consult what it deemed to be its own interest in making settlement, but it did not have the right to abuse the power vested in it and recklessly and contumaciously refuse to settle. It can not be said that the averments in the third cause of action in the case at bar show reckless or contumacious conduct on the part of the indemnity company. It went no farther than to concede strong probability of a large verdict, perhaps bearing in mind that judgments are not always rendered on verdicts which are returned, and, if rendered, are sometimes for smaller amounts than named in the verdicts, and perhaps relying also on the possibility of obtaining a reversal of any judgment that might be rendered. The indemnity company in determining how much it would pay by way of settlement had the right to take into consideration all the possibilities that were or might be presented to relieve it from ultimate liability under the terms of its *353 policy, including the possible insolvency of the assured. It is evident from the fact that it offered 70 per cent, of the face of the policy by way of settlement that it must have realized a strong probability of recovery in a large sum. However, in view of the fact that its maximum liability under the policy was $5,000, it falls very far short of being an admission on its part of a liability for the amount of $5,000 for it to suggest the probability of a recovery of an amount that would constitute such a liability; much less does it tend to show any bad faith on its part.
We find nothing in the case of Brassil v. Maryland Casualty Co., 210 N. Y., 235, inconsistent with the views expressed in this opinion.
The judgment will be affirmed.

Judgment affirmed.

Chittenden and Kinkade, JJ., concur.
Judges of the Sixth Appellate District, sitting in place of Judges Grant, Carpenter and Lieghley,' of the Eighth Appellate District.