AUTO MUTUAL INDEMNITY COMPANY, a New York Corporation, v. JOHN W. SHAW.

184 So. 852.

Opinion Filed November 9, 1938.

On Rehearing December 16, 1938.

G. B. Fishback, C. L. Waller, B. A. Meginniss and Chas. H. Spitz, for Plaintiff in Error.

Maguire & Voorhis, for Defendant in Error.

PER CURIAM.—This cause is here on writ of error to a judgment in behalf of the plaintiff below entered by the Circuit Court of Orange County, Florida. The suit was brought on an insurance policy which was given to protect and save harmless on account of damages and injuries resulting from accidents or collisions while one J. B. Jarrell was conducting or doing a taxi cab business in the City of Orlando. The declaration is in two counts. The first alleged the recovery of a judgment by plaintiff against J. B.

Jarrell for the sum of $9500.00 for personal injuries sustained due to the negligence of the said J. B. Jarrell. The bodily injuries of the plaintiff were such as to come within the promise and undertaking of the said policy of insurance issued by the Auto Mutual Indemnity Company, Writ of execution issued on said judgment against J. B. Jarrell doing business as the Economy Taxi Cab Company and a return of *nulla bona* was made thereon by the Sheriff of Orange County, Florida.

The second count contained the material allegations of the first and charges negligence and bad faith on the part of the insurance company for not paying or settling the said claim against it, and other allegations thereof are, viz.:

"That the said Auto Mutual Indemnity Company undertook to defend * * * and * * * assumed complete charge of the investigation, negotiation and defense of said claim of the said John W. Shaw. That it then and there became and was the duty of the said Auto Mutual Indemnity Company to exercise skill, care and good faith to the end of saving the said J. B. Jarrell harmless, as contemplated by the said policy of insurance. That it was the duty of the said Auto Mutual Indemnity Company to act honestly to effectually indemnify and save the said J. B. Jarrell harmless, to the extent that it must make whatever payment and settlement an honest judgment and discretion dictate, within the limits of the policy. That the defendant, Auto Mutual Indemnity Company, well knew that the said accident occurred * * * in such circumstances as to come within the promise and undertaking of said policy, and to render liable and oblige the said defendant to insure the said J. B. Jarrell under the terms of the said policy and in accordance with the duty imposed on it by law and the contract. That the defendant knew, or by the exercise of reasonable care should have known, that the said accident was caused solely by the negli-

gence of the said J. B. Jarrell * * * and occurred under such circumstances that the law imposed liability upon the said J. B. Jarrell for damages on account of bodily injuries suffered by the plaintiff, John W. Shaw, as the result of such accident. That the said John W. Shaw was thereby severely injured * * * and * * * was thereby permanently incapacitated; all of which was well known to defendant, Auto Mutual Indemnity Company, prior to and at the time of the institution of suit by the said John W. Shaw against the said J. B. Jarrell. * * * That the defendant then and there well knew that the injuries sustained by the said John W. Shaw were serious and permanent, and that the damages suffered by the said John W. Shaw greatly exceeded the sum of $6,000.00.

"That on June 27, 1935, the said John W. Shaw made to the defendant, Auto Mutual Indemnity Company, a compromise offer, without prejudice to his interests, to settle for $5,000 cash, and that such compromise offer would be withdrawn if payment should not be made within thirty days. Said compromise offer of $5,000.00 was within the policy limits of the said insurance policy. Yet the defendant then and there arbitrarily, wrongfully and oppressively in disregard of its obligation to the said J. B. Jarrell and to the said John W. Shaw, refused to make said settlement within the policy limits as aforesaid.

"That the defendant then and there well knew, or by the exercise of reasonable care and good faith, should have known that there was no reasonable prospect of securing a verdict for defendant on trial of the case and that there was a reasonable prospect that any verdict entered on trial would be for plaintiff in a sum greatly in excess of the limits specified in the said insurance policy. And the defendant negligently and carelessly failed to make any settlement within the policy limits or otherwise, and the defendant

wrongfully and arbitrarily and in disregard of its duty as aforesaid refused to make settlement for $5,000.00 * * * . That said action was thereafter defended, in the name and on behalf of the said J. B. Jarrell, by the said Auto Mutual Indemnity Company; * * * and a verdict was duly rendered therein in favor of the said plaintiff, John W. Shaw, in the sum of $9500.00 on December 16, 1935; * * * That the said Auto Mutual Indemnity Company knew there was no reasonable prospect of reversing the said judgment on appeal or writ of error, and in fact did not appeal therefrom; and said judgment has not been reversed, modified nor set aside, and is still in full force and effect."

The case was tried on a plea of legal tender as to the first count and a plea of not guilty as to the second count. The plaintiff filed two replications as to the plea of legal tender. On November 21, 1936, a verdict and judgment for the plaintiff was entered, viz.:

"And on the 20th day of November, A. D. 1936, during the Fall Term of said Court, came the respective parties in person and by their attorneys and submitted said cause on the issues joined between them to a jury, to-wit: J. M. Simmons and five others, who having been duly sworn according to law, and having heard the evidence, the argument of counsel for the respective parties, and the charge of the court, and having retired and considered the same, returned the following verdict in open court, to-wit:

"We, the Jury, find for the plaintiff on the first count, and assess his damages at the total of the following sums: $5000.00 plus $63.80 plus $533.97 as surgical aid made necessary by such accident plus $800.00 as a reasonable sum as fees or compensation for plaintiff's attorneys in this cause.

"We, the jury, find for the plaintiff on the second count and assess his damages at $10,097.77. So say we all.

J. M. Simmons, Foreman.

."And the court having determined that the plaintiff is now entitled to recover the said sum of $10,097.77 and that defendant has paid into Court the sum of $5764.59, which sum the Clerk is directed to pay to plaintiff's attorneys.

"It is thereupon CONSIDERED, ORDERED AND ADJUDGED by the Court that the said plaintiff, John W. Shaw, do have and recover of and from the said defendant, Auto Mutual Indemnity Company, a corporation organized and existing under the laws of the State of New York, the sum of Four Thousand three hundred thirty-three and 18-100 Dollars ($4,333.18), together with his costs herein expended and herein taxed at $82.62, for which let execution issue."

A motion was made by the defendant for a new trial and overruled and denied by the lower court when final judgment was entered and writ of error taken, transcript of record perfected, and the cause is here for review on a number of assignments of error. The pertinent portions of the insurance policy are, viz.:

"Auto Mutual Indemnity Company of New York (Hereinafter called the Company).

"Section I—Agreements.

"Does Hereby Agree * * * .

"1. Bodily injuries. To pay, within the limits specified in Statement 3, the loss from the liability imposed by law upon the Assured for damages on account of bodily injuries, including death resulting at any time therefrom, suffered or alleged to have been suffered by any person or persons as the result of such accidents. * * *

"3. Defense. To defend, in the name and on behalf of the Assured, any claim or suit against the Assured, even if groundless, to recover damages on account of bodily injuries and/or/property damage covered hereby.

"4. Expense. To pay: (a) for the immediate surgical aid made necessary by such accidents; (b) all expenses incurred by the Company for investigation, negotiation, and defense of claims and suits; (c) all premiums on attachment and/or appeal bonds, and all costs taxed against the Assured, in suits for damages on account of bodily injuries and/or property damage covered hereby; (d) all interest accruing on the full amount of any judgment in such suit (less that part, if any, of the judgment which is for property damage if Agreement 2 is not in effect), if on account thereof the Company is liable for any payment under any of the foregoing Agreements, until the Company shall have delivered its check, to the judgment creditor or to his attorney of record, in payment of its liability under said Agreements.

"5. Insolvency or Bankruptcy of Assured. The insolvency or bankruptcy of Assured shall not release the Company from any payment otherwise due hereunder, and if, because of such insolvency or bankruptcy, an execution on a judgment against Assured is returned unsatisfied, the judgment creditor shall have a right of action against the Company to recover the amount of said judgment to the same extent that Assured would have had if he paid the judgment. * * *

"Section II.—Conditions. * * *

"B. Settlements. The Company shall have the right to settle any claim or suit at its own cost, and the Assured shall not incur any expense (other than for said immediate surgical aid) nor settle any such claim or suit, except at his own cost, without the written consent of the Company. * * *

"Section III.—Statements. * * *

"3. The Company's liability, as respects each automobile covered hereby, shall be limited.

"(a) Under Agreement 1, (Bodily Injuries) to Five Thousand and No/100 Dollars ($5,000.00) as respects any one accident resulting in bodily injuries to or death of one person, and, subject to that limits for each person, the Company's total liability on account of any one resulting in bodily injuries or death to more than one person is limited to Ten Thousand and No/100 Dollars ($10,000.00). Regardless of the foregoing limits the Company will pay as provided in Agreement 4."

It has been made to appear by the transcript that on June 20, 1935, John W. Shaw filed suit against J. B. Jarrell, trading and doing business as Economy Cab Company, and on December 16, 1935, obtained in the Circuit Court of Orange County, Florida, a judgment in the sum of $9,500.00 and costs, all of which was done prior to the filing of the suit at bar. One of the first questions for determination is: Is the defendant in error, plaintiff below, a third party protected by and may maintain this suit for the purpose of recovering on said bond? A provision of the policy is that the assured shall not release the insurance company from any payment due hereunder, because of insolvency or bankruptcy and when an execution on a judgment against assured is returned unsatisfied the judgment creditors shall have the right of action against the insurance company to recover the amount of said judgment to the same extent that the assured would have. It is shown here that a judgment was obtained against the assured and an execution returned unsatisfied. It seems that the creditor under the terms of the policy has a right of action against the insurance company to recover the amount of the judgment against the assured. The things contemplated by the terms of the policy have transpired which authorizes a right of action. The authorities are in harmony with the rule that one for whose benefit a contract is made, although not a

party to the agreement and not furnishing the consideration therefor, may maintain an action against the promisor. In other words, a third person can enforce a contract entered into between others for his benefit. See 81 A. L. R. 1279.

Judge Nathan P. Bryan, of the Circuit Court of Appeals, Fifth Circuit, in the case of Ohio Casualty Ins. Co. v. Beckwith, 74 Fed. (2nd) 75, speaking for the Court where a similar question to the one involved here was under consideration, said: "A promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise. * * * Where a contract creates a right or imposes a duty in favor of a third person, the law presumes that the parties intended to confer a benefit on him and furnishes him a remedy." See Slavens v. Standard Accident Ins. Co., 27 Fed. (2nd) 859. The policy involved in this suit was taken out in compliance with an ordinance of the City of Orlando where the insured was doing a business as the Economy Taxi Cab Company and a permit to operate such a business would have been withheld until the policy for the protection of the public had been supplied. In the case of Michel v. American Fire & Casualty Co., 82 Fed. (2nd) 583, a Florida case, and similar to the one at bar, the Court said: "The policy was not taken out pursuant to any statute protecting the public. Of course, a third person, a stranger to the contract and the consideration, may enforce a promise for the purpose of benefitting him, according to the overwhelming weight of American authority." See Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855; Pirie Scott & Co. v. Parrett, 346 Ill. 252, 178 N. E. 498, 81 A. L. R. 1262, and note; Wright v. Terry, 23 Fla. 160, a So. 6; Hunter v. Wilson, 21 Fla. 250; Enns-Halbe Co. v. Templeton, 101 Fla. 609, 135 So. 135; Johnson Electric Co. v. Columbia Casualty Co., 101 Fla. 186, 133 So. 850.

See also Woodbury v. Tampa W. W. Co. 573 Fla. 248, 49 So. 556, 21 S. R. A. (W. S.) 1034.

Upon the principle of law well established and long recognized, where a person engages another, for a valuable consideration, to do some act for a benefit of a third, the latter who would enjoy the benefit of the act may maintain an action for the breach of such engagement, the law operates upon the acts of the parties, creates a duty, establishes a privity and implies the promise and obligation. We therefore hold that the plaintiff to this suit is within the benefits of the policy sued upon and has a right to maintain this suit.

Counsel for plaintiff in error concedes that the proceedings of the lower court under count one of the declaration, the verdict of the jury, and the entry of judgment on said verdict is free from error. It is unnecessary to consider the same further.

We now pass to the legal sufficiency of the second count of the declaration, *supra*. The defendant directed a demurrer thereto, which was by the lower court overruled and denied. The second count is the legal foundation for the judgment entered by the lower court for the amount of $4,-333.18. The motion for a new trial presents squarely to this Court the entire proceedings in the lower court under the second count of the declaration.

The policy provides: that the insurance company shall have the right to settle any claim or suit at its own costs, and the assured shall not incur any expense (other than for immediate surgical aid), nor settle any claim, except at his own cost, without the written consent of the insurance company. The policy provides that the insurance company shall defend any claim or suit * * * on account of bodily injuries and other property damages thereby covered. The count alleges bad faith on the part of the insurance company in the settlement of its liabilities under the conditions

and provisions of the policy. It presents a new question for determination by this court. The same question was considered by the Supreme Court of Wisconsin in the case of Wisconsin Zinc Co. v. Fidelity & Deposit Co., 162 Wis. 39, 155 N. W. 1081, Ann. Cas. 1918C page 399, text 403-4, when the two rules were before that court, and said:

"There are two classes of cases relied on by the plaintiff, neither of which affects the questions before us. One of them has arisen where the insurer in violation of its contract obligation refuses to assume the defense of an action. There it is held that the insurance company by breaching its contract releases the assured from its obligation not to settle, and that upon such breach the assured may make any reasonable settlement that prudence and good judgment would dictate and that the insurer becomes liable for the amount paid, not exceeding the limit of indemnity which it agreed to furnish.

"St. Louis Dressed Beef, etc. Co. v. Maryland Casualty Co. 201 U. S. 173, 26 S. Ct. 400, 50 U. S. (L. Ed.) 712; Butler v. American Fidelity Co., 120 Minn. 157, 139 N. W. 355, 44 L. R. A. (N. S.) 609; Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S. W. 217, L. R. A. 1915F 958. In the other class of cases it is held that the insurer, having agreed to assume and conduct the defense of actions brought to recover damages for injuries assumes the obligation of conducting such defense with ordinary care, skill and prudence, and that if it fails to do so it is guilty of actionable negligence for which there may be a recovery. These cases are based on the unquestionably sound doctrine that where there is a negligent breach of a legal duty the injured party has a remedy. Attleboro Mfg. Co. v. Frankfort Marine Acc. etc. Ins. Co., 171 Fed. 495, and cases cited. There is a legal duty to defend. Here

there is a right reserved to settle, but no legal duty is assumed to exercise ordinary care in making a settlement."

The conduct amounting to fraud or bad faith was considered in Best Building Co. v. Employers' Liability Assurance Corp., 247 N. Y. 451, 160 N. E. 911, 71 A. L. R. 1464. See note at page 1492, 71 A. L. R.; Seaton v. Pickens, 126 Tex. 271, 87 S. W. (2nd) 709, 106 A. L. R. 512, and note. It cannot be overlooked that in recent years there has been a great development of automobile law growing out of the operation of automobiles on the highways, congested traffic, the law of the road, collisions and accidents and personal rights of individuals traveling on the highways by automobiles. Insurance companies of late years have in many instances issued policies of insurance covering many of the accidents incident to travel to automobiles and occupants thereof. These contracts are prepared by the insurance companies. Their liability is established by contract and not by law. It is common knowledge that a large per cent of claims arising under these insurance contracts are settled or adjusted without litigation. The contract here gives the power of settlement to the insurance company and took the right away from the assured.

The case of Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 231 N. W. 257, was an action to recover the excess over the coverage of an automobile indemnity policy which was paid by the plaintiff to satisfy a judgment for damages for injuries to a child struck by a truck. The policy limited the liability to the sum of $5000.00 and the insurance company had full and complete control of handling not only the settlement of the claim but the defense of the suit. The action resulted in a judgment against the assured for the sum of $10,000.00 and the insurance company contended that its total liability should not exceed the amount of the $5,000.00 stipulated in the policy. It was contended that the insurance

company was guilty of "bad faith" in not settling for the sum of $5,000.00 which could have been done prior to suit and because of its bad faith in not settling the assured had a cause of action for the total amount of the judgment in the sum of $10,000.00 rendered against him. The right to maintain this action because of bad faith was upheld. On petition for rehearing in the same cause reported in 204 Wis. 12, 235 N. W. 413, the court modified its previous decision of Wisconsin Zinc Co. v. Fidelity & Deposit Co., 162 Wis. 39, 155 N. W. 1081, Ann. Cas. 1918C 399, and so doing said:

"It is right of the insurer to exercise its own judgment upon the question of whether the claim should be settled or contested. But because it has taken over this duty, and because the contract prohibits the insured from settling, or negotiating for a settlement, or interfering in any manner except upon the request of the insurer, such as assisting the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith. Its discretion not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. If upon such consideration it decides that its interest will be better promoted by contesting than by settling the claim, the insured must abide by whatever consequences flow from that decision. He has so agreed. But, as already stated, such decision should be an honest and intelligent one. It must be honest and intelligent if it be a good-faith conclusion. In order that it be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained.

"This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated. If it exhausts

the sources of information open to it to ascertain the facts, it has done all that is possible to secure the knowledge upon which a good-faith judgment may be exercised. But we do not go as far as to say that, in order to characterize its judgment as one of good faith, it is necessary that it should absolutely exhaust all sources of information. We go only so far as to say that it should exercise reasonable diligence in this behalf, which means such diligence as the great majority of persons use in the same or similar circumstances. This is ordinary care. So it seems to us that the statement in the opinion, which is criticised, to the effect that a good-faith decision on the part of the insurance company upon the question of settlement must be preceded by the exercise of that degree of care and diligence which a man of ordinary care and prudence would exercise in the investigation and adjustment of claims, states the duty devolving upon the insurer, just as we declare it to be.

"In addition to this a further duty plainly devolves on the insurer. After it has made an investigation of the accident and the injury, and faces the probability that a recovery will exceed indemnity, it plainly becomes the duty of the insurer to indicate such fact to the insured, to the end that he may take such steps as may be open to him for his own protection. What his rights in this respect are, we do not find it necessary now to decide, for reasons will hereinafter appear. The company owes this duty to the insured because it has taken over all of the rights which formerly belonged to the insured, which could be exercised by him to place him in possession of the facts suggesting the possibility or probability of a recovery beyond the limit of the indemnity. Because the contract takes away these rights from the insured and transfers them to the insurer, the insurer owes to the insured the implied duty to so exercise them as to discover

the possible extent of the liability and to communicate such fact to the insured."

The identical question was before the Circuit Court of Appeals, Fifth Circuit, in the case of American Mut. Liability Ins. Co. v. Cooper, 61 Fed. (2nd) 446, when that Court said:

"It is well settled in cases of limited liability insurance that the insurer may so conduct himself as to be liable for the entire judgment recovered against the insured, although that judgment exceeds the amount of liability named in the policy. But the courts that have considered the questions are not in agreement as to the nature and kind of proof which it is incumbent upon the insured to make in an action against the insurer for the excess which the insured has been compelled to pay over the amount named in the policy. Some of these cases hold that the insured is entitled to recover upon proof that the insurer is refusing to settle a claim for damages covered by the policy was guilty of negligence. Cavanaugh Bros. v. General Accident Fire & Life Assurance Corp.. 79 N. H. 186, 106 A. 604; Douglas v. U. S. F. & G. Co., 81 N. H. 371, 127 A. 708, 37 A. L. R. 1477; G. A. Stowers Furniture Co. v. American Indemnity Co., (Tex. Com. App.) 15 S. W. (2nd) 544; Attleboro Mfg. Co. v. Insurance Company (C. C. A.) 240 Fed. 573. Other decisions impose a heavier burden upon the insured, and deny recovery unless he can show that the insurer in refusing to make settlement acted in bad faith. New Orleans, etc., R. Co. v. Maryland Casualty Co., 114 La. 154, 38 So. 89, 6 L. R. A. (N. S.) 562; Wisconsin Zinc Co. v. Fidelity. etc., Co., 162 Wis. 39, 155 N. W. 1081, Ann. Cas. 1918C, 399; Auerbach v. Maryland Casualty Co., 236 N. Y. 247, 140 N. E. 577, 28 A. L. R. 1294. There are cases of the latter class which exonerate the insurer if, considering its own interest only and ignoring entirely the interest of the insured, it acts in good faith; but the prevailing rule seems to be

that the insurer must act in good faith toward the insured. Brassil v. Maryland Casualty Co., 210 N. Y. 235, 104 N. E. 622, L. R. A. 1915A, 629; Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 231 N. W. 257, 235 N. W. 413."

The United States Supreme Court denied a petition for a writ of certiorari in American Mutual Liability Ins. Co. v. Cooper. See 289 U. S. 736, 53 Sup. Ct. 595, 77 L. Ed. 1483.

It is the duty of the Court here to give effect to all the provisions of the policy sued upon. The provisions of the policy are a guide to control the conduct and action of all parties claiming interests under the same. It is not to be assumed that the parties, or either of them, have a right to act arbitrarily. The policy here gave the company the right to take charge of the defense of this claim.

It appears that the insurance company in the settlement of claims and in conducting a defense before the court on suits filed should be held to that degree of care and diligence which a man of ordinary care and prudence should exercise in the management of his own business. See G. A. Stowers Furniture Co. v. American Indemnity Co., (Tex.) 15 S. W. (2nd) 544; City of Wakefield v. Glove Indemnity Co., 246 Mich. 645, 225 N. W. 643; Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S. W. (2nd) 777; Attleboro Mfg. Co. v. Frankfort Marine, etc. Ins. Co., 240 Fed. 573; Cavanaugh Bros. v. General Accident Fire & Life Assr. Corp., 79 N. H. 186, 106 Atl. 604; Ballard v. Ocean Accident & Guarantee Co., 86 Fed. (2nd) 449. The prevailing rule seems to be, however, that the insurer must act in good faith toward the assured in its effort to negotiate a settlement. This the defendant concedes, in complete accord with the holding in the Cooper case, *supra,* that "the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must appear that it acted in good faith and dealt fairly with the insured. This relationship imposes

upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured" considering that the action below cannot be sustained either upon the theory of negligence or of implied contract, but that it may be supported upon the allegations of bad faith exercised in the settlement negotiations by the defendant to the plaintiff. See Noshey v. American Automobile Ins. Co., 68 Fed. (2nd) 808; Maryland Casualty Co. v. Cook-O'Brien Const. Co., 69 Fed. (2nd) 462; Tiger River Pine Co. v. Maryland Casualty Co., 163 S. C. 229, 161 S. E. 491, 170 S. E. 346.

Let us examine the evidence adduced in light of the rule of law controlling the case at bar. The plaintiff offered in evidence: (a) the policy sued on; (b) the final judgment in Shaw v. Jarrell; (c) writ of execution thereon; (d) statement of account of John Shaw with Orange General Hospital covering the period of hospitalization; (e) statement of account due the attending physicians; (f) testimony of John W. Shaw; (g) testimony of Maxwell W. Wells; (h) letter addressed to the insurer dated June 27, 1935, expressing a willingness to accept the sum of $5,000.00 as full settlement of the plaintiff's injuries; (i) letter dated February 24, 1936, to the attorney for the insurer; (j) a number of letters between the attorneys for the respective parties from June to November, 1936, about a settlement of the case. Several witnesses were called for the plaintiff below and a number of letters from the files containing the correspondence about the case was offered by the plaintiff. The trial court denied a motion for a directed verdict as to the second count of the declaration.

The defendant offered in evidence a letter dated June 27, 1935, addressed to the defendant below and signed by the insured, J. B. Jarrell, and the following language was used:

"I agree entirely with Mr. Scully's views that this offer without prejudice to my rights is very fair and adequate under the circumstances and while I realize that the extent of insurance coverage afforded me under this policy is $5,-000.00 and that a judgment if rendered in favor of Mr. Shaw may exceed $5,000.00, I agree to hold the insurer harmless for any judgment in excess of $5,000.00, conforming entirely to the policy provision incorporated in my insurance policy." Mr. H. B. S. Hammond and Mr. G. B. Fishback were called as witnesses for defendant. The files of the adjuster about the case were likewise offered in evidence with other items.

We have given careful consideration to all the testimony of the respective parties and it is our conclusion that the evidence is insufficient to sustain the verdict as to the second count of the declaration. There is no error as to the proceedings in the lower court under the first count of the declaration. The judgment appealed from is reversed and a new trial granted as to the second count of the declaration.

It is so ordered.

TERRELL, C. J., and WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., dissents.

THOMAS, J., not participating.

## ON REHEARING

PER CURIAM.—On petition for rehearing it is suggested that a clerical misprision occurred by omitting from the final judgment appearing in the transcript of the record the sum of $533.97 as interest and because of said error this item was omitted in the original opinion filed in this cause. The correct amount to be recovered under the first count of the declaration is, viz.:

Face of policy _____$5,000.00
Costs taxed in Shaw v. Jarrell _____ · 63.80
Interest on Judgment Shaw v. Jarrell __ 533.97
Surgical aid as provided in policy _____ 533.05
Attorney's fee herein _____ 800.00

TOTAL _____$6,930.82

The defendant having paid into court the sum of $5,-764.59, there remains a balance due to the plaintiff under count one of the declaration the sum of $1166.23, plus costs in the amount of $82.62, making the total balance due the plaintiff below under count one of the declaration the sum of $1248.85.

The original opinion is modified on petition for rehearing to read: The judgment appealed from is affirmed as to the first count to the extent that the $1166.23 and costs in the amount of $82.62, making a total amount of $1248.85 as recoverable thereunder. The judgment as to the second count is reversed and a new trial granted. It is so ordered.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.