STURGIS, Judge
(dissenting).
Inherent in the certification of this court’s decision to the Supreme • Court under the provisions of Section 4(2), Article V, Constitution of Florida, is the proposition that it “passes upon a question of great public interest.” That determination of the majority is conclusive in point of law, and I only question it in point of fact.
The word “great” as used in the cited constitutional provision should be narrowly construed to the end that only matters of a highly urgent character — those upon which the immediate welfare of the public in a grave as well as substantial measure depends — should be clothed with the aura of the constitutional certificate. For unless such concept is closely adhered to it is certain, as pithily expressed by Mr. Justice Thomas speaking for the Supreme Court in Lake v. Lake, Fla.1958, 103 So.2d 639, 642, that the District Courts of Appeal will become “way stations on the road to the Supreme Court.” In that landmark case our Supreme Court further said:
“It seems trite to remark that everyone concerned wishes to see justice done. It can be stated without hesitancy, qualification, or reservation, that every man is entitled to his day in court. He is vouchsafed a fair trial and he is secured a fair hearing on an appeal which he may take as a matter of right. But he is not entitled to two appeals.
“The quality of justice may not be gauged by the treatment accorded one litigant without regard for his adversary. Justice should be done, but not overdone. When a party wins in the trial court he must be prepared to face his opponent in the appellate court, but if he succeeeds there, he should not be compelled the second time to undergo the expense and delay of another review.”
As I analyze the certified decision, it involves nothing more than a run-of-the-mill problem such as appellate courts are called on to handle day in and day out. The unanimous conclusion reached therein rests upon the elemental proposition that an unambiguous written contract will be given the commonly accepted meaning of the language employed and absent an overriding statute or unless clearly against public policy, will be enforced according to the expressed intent of the parties.
Appellee relied on the case of Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852, in support of his contention that the question certified to this court should be answered in the affirmative. We answered in the negative and on petition for rehearing appellee insisted that our decision was in direct conflict with the point of law established by the Supreme Court in the Shaw case. Oral argument was ordered by this court on the subject of whether we should comply with appellee’s suggestion that we certify the decision in this case to the Supreme Court, and again the main thrust of appellee’s argument was to the effect that we did not follow the rule established in the Shaw case.
I think that the decision herein (1) painstakingly distinguished the Shaw case, (2) does not remotely involve a matter of *776 “great public interest” as contemplated by the constitution, and (3) clearly set the landmarks by which the appellant might seek certiorari to have it reviewed by the Supreme Court on the constitutional ground that it is in direct conflict with its decision in the Shaw case, if he felt that to be a fact. I do not think appellee is in need of the assistance of this court’s certificate of “great public interest” to accomplish that purpose.
I am in full accord with the principle laid down in the subject decision but my primary concern is that this court should: not lend color to any possible judicial tinkering upon a subject which, as said by Wigginton, C. J., in his concurring opinion, if needful of a remedy should find it in the legislature rather than in the courts.
I therefore dissent.