**AMERICAN SURETY COMPANY OF NEW YORK, Appellant,**

v.

**J. F. SCHNEIDER & SON, Inc., Appellee.**

Court of Appeals of Kentucky.

Nov. 15, 1957.

John P. Sandidge, Woodward, Hobson & Fulton, Louisville, Henry L. Bryant, Pineville, for appellant.

A. E. Funk, Jr., Arthur Rhorer, Middlesboro, for appellee.

MONTGOMERY, Judge.

American Surety Company of New York appeals from a judgment in the sum of $2,700 in favor of J. F. Schneider & Son,

Inc., of Middlesboro. The basis of the claim was that the appellant, in bad faith, failed to settle two damage actions against appellee.

Several grounds are urged for reversal. It is necessary to discuss only whether appellee proved bad faith on the part of the appellant, the single issue submitted to the jury. Appellant's motion for a directed verdict and motion for a judgment notwithstanding the verdict were overruled.

Appellant was the insurer of the trucks operated by appellee. The limits of liability on the policy were: as to bodily injury, $10,000 for each person and $20,000 for each accident, and as to property damages, $5,000. The policy contained the following provision:

"the company shall:

"(a) defend any suit against the insured alleging such injury, * * * or destruction and seeking damages on account thereof, * * * but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

One of appellee's trucks covered by the policy collided with a car in Lincoln County, Kentucky, on June 17, 1952. Walter Peterson, driver of the car, was killed. He had about seventeen years' life expectancy and a pension paying close to $5,000 annually. Lucille Peterson, his wife, received severe permanent injuries. The damage to the car, as stipulated, was $2,100. Two actions for damages seeking recovery of $52,000 and $55,100 were filed against appellee.

Appellant employed Sam Kennedy, of Somerset, to defend the actions as soon as they were filed. Following Kennedy's death, Fritz Krueger and M. D. Harris, both of Somerset, were employed. Since the actions involved amounts in excess of the insurance coverage, appellee employed his regular attorney, Arthur Rhorer, of Middlesboro, to represent his interest in the defense and upon the counterclaim. Appellee also employed Ernest G. Baxter, of Stanford, to assist in the trial. The plaintiffs in the action were represented by Pat Rankin, Stanford, Kentucky, and William C. Wilson, Knoxville, Tennessee.

The cases were consolidated for trial. Appellee had filed a counterclaim for damage to its truck. The only eyewitness to the collision was the truck driver. The evidence was conflicting. The decisive fact issue was to as which vehicle was traveling in the wrong lane of the highway at the time of the collision.

Prior to the date of trial, there had been some discussion of settlement. The claims manager for appellant, L. R. McClure, had discussed settlement with the Knoxville attorney, who had asked $75,000. The lowest offer to settle prior to trial was $30,000, which was considered as too high by all of the parties concerned in the defense of the actions. On the day before the trial at a conference of the defense counsel and George Schneider, appellee's president, settlement was discussed. It was agreed that the cases should be settled if a reasonable figure could be secured. Authority was obtained by Krueger from appellant to offer $17,000 in settlement and appellee agreed to contribute $1,000 in addition. Rankin, as attorney for the claimants, was contacted, but the offer was refused. A counteroffer of $30,000 was made, which was reduced to $28,000. No settlement resulted.

On Thursday, the day of the trial, Schneider said, he demanded of Krueger that an offer of $23,000 be made, which was not done. On Friday he directed Baxter, his attorney, to make the offer. Appellee was to pay $900 and appellant $22,100, its full liability.

The case was submitted to the jury late Friday afternoon, and after short consideration the jury was excused for the weekend. Krueger approached Rankin with the proposal that: "If you get your people to accept $23,000, I will see if I can

get it for you." Rankin refused, saying that $28,000 was the low offer. Baxter then presented the matter to Rankin again, unsuccessfully. Schneider said he demanded that the offer be kept open until the following Monday. Excepting Baxter, all of the defense counsel, McClure, and Schneider departed. Baxter was to await the jury action on Monday.

After the jury departed, Rankin visited the jury room to see if there was anything there that would give him some idea as to what the jurors were thinking. From his observation of a blackboard used by the jury, he concluded that some of the jury felt that appellee's defense was good. He considered the question of liability as not clear. The largest verdict in a death case rendered theretofore in Lincoln County had been $5,000.

Mrs. Peterson and Rankin's co-counsel returned to Stanford on Sunday night. Rankin discussed the case with them and in view of doubtful liability and the record of low jury verdicts, it was agreed that the $23,000 offer should be accepted. On Monday morning when the court convened, the jury returned to its room for further consideration of the verdicts. Rankin then approached Baxter and unsuccessfully attempted to obtain an offer in excess of $23,000. Baxter was the only attorney present representing the defense. Rankin then agreed to accept the $23,000 offer if it was still open. Baxter replied: "Well, Pat, you turned that down when all of the attorneys were here and I don't know whether I can get hold of them or not." Less than an hour later and before Baxter could contact all of the interested parties, the jury returned verdicts totaling $25,700. The verdicts were the largest ever returned in that court in a similar case.

Upon satisfaction of the judgment by the parties to this appeal, appellee sued appellant to recover $2,700, the excess over the suggested offer of $23,000. Appellee urges as evidence of bad faith that the appellant failed to offer or make a settlement based on its payment of the full policy liability and that appellant had no representatives in Stanford on the day the verdict was returned.

The insurance policy here involved gave the appellant the right to make such investigation, negotiation, and adjustment of the claims sued on as it deemed expedient. As insurer, appellant was authorized to effect any compromise or settlement of the claims it considered just and advantageous providing it acted in good faith in so doing. Bratton v. Speaks, Ky., 286 S.W.2d 526.

There is no liability on the insurer for failure to settle claims against the insured in excess of the policy limit in the absence of bad faith. It is the duty of the insurer to exercise the utmost good faith. Mere errors of judgment are not sufficient to constitute bad faith. Acting in bad faith or the failure to exercise good faith is sufficient to create liability on the part of the insurer for the excess of the policy limit. Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S.W.2d 777. See Fidelity & Casualty Co. of New York v. Stewart Dry Goods Co., 208 Ky. 429, 271 S.W. 444, and cases cited therein.

No satisfactory test to determine good or bad faith in a case such as this has been formulated. See 40 A.L.R.2d § 5, page 181. The insurer is interested in settling the claim at the lowest amount within the policy limit, while the insured desires to avoid any liability for the excess. These interests may conflict. The insurer has control of the defense and settlement of the claim. The insurer is not required to consult the interest of the insured to the exclusion of its own interest. The right to defend and settle provision is obviously for the protection of the insurer. Good faith requires the insurance company to do nothing to the prejudice of the insured which is not beneficial to itself; yet, when the interests are in conflict, there is no duty to the insured except that for which the in-

surer has expressly contracted. St. Joseph Transfer & Storage Co. v. Employers' Indem. Corp., 224 Mo.App. 221, 23 S.W.2d 215. So long as it acts in good faith, considering the interest of the insured as well as its own, and not capriciously, an insurer cannot be required to settle a case rather than to litigate a doubtful issue or to bear the financial burden imposed on the insured if ultimate liability should exceed the policy limit. Farm Bureau Mut. Auto. Ins. Co. v. Violano, 2 Cir., 123 F.2d 692, certiorari denied 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747.

■ There is no merit to appellee's argument that the insurer is compelled to offer or make a settlement of its full liability. The inducement to an insurer to settle is that it can do so for less than the policy limit. There is no such inducement if the insurer is compelled to offer the full policy amount in settlement. It may as well try the case in the hope for a jury verdict for less than its full liability.

In the damage cases tried, the evidence as to liability was conflicting. We agree with the conclusion in Connet Lumber Co. v. New Amsterdam Casualty Co., 8 Cir., 236 F.2d 117, 127, that:

"The inaccuracy of a prophecy as to what a jury will do in the trial of a personal injury case where the evidence is conflicting or gives rise to conflicting inferences does not, in our opinion, justify a finding of bad faith."

■ The failure of appellant to have its representative in Stanford on the following Monday cannot be considered as bad faith in the light of the circumstances. All negotiations had been broken off after two unsuccessful efforts on the previous Friday. There had been no indication that any settlement less than $28,000 would be acceptable. In view of appellee's demand that appellant pay in full, there was no inducement to the appellant to make any further effort. Had the appellee agreed to share a greater portion of the suggested settlement amount, the inducement would have been greater to appellant to settle, and appellee would be in a better position to argue bad faith now.

Judgment is reversed with direction to enter a judgment in favor of appellant.