Pearl **DETENBER**, Administratrix of the Estate of Terry Detenber, Deceased, Plaintiff-Appellant,

v.

**AMERICAN UNIVERSAL INSURANCE CO.**, Defendant-Appellee.

Viola B. **TOWNSEND**, Administratrix of the Estate of Richard Mattingly, Deceased, Plaintiff-Appellant,

v.

**AMERICAN UNIVERSAL INSURANCE CO.**, Defendant-Appellee.

Nos. 16728, 16729.

United States Court of Appeals
Sixth Circuit.

Feb. 9, 1967.

Raymond C. Stephenson, Louisville, Ky., for appellant, Detenber, Josephine P. Hughett, Louisville, Ky., on the brief.

Harry L. Hargadon, Louisville, Ky., for appellant, Townsend, Josephine P. Hughett, Louisville, Ky., on the brief.

John A. Fulton, Louisville, Ky., for appellee, Robert C. Hobson, Woodward, Hobson & Fulton, Edwin O. Davis, Davis & Mahan, Louisville, Ky., on the brief.

Before EDWARDS and PECK, Circuit Judges, and FOX, District Judge.*

JOHN W. PECK, Circuit Judge.

Having upon motion been consolidated by the District Court, these actions were there and will here on this appeal be considered as a single case.

The present controversy grew out of a trial in a state court in Kentucky, which in turn grew out of a vehicular accident. Terry Detenber, 15, Richard Mattingly, 14, and a Patricia Ross were passengers in an automobile driven by Michael Clark, 18, which was involved in a collision with a bus owned and operated by the Louisville Transit Company. The collision resulted in the deaths of Detenber and Mattingly, and their administratrices and Miss Ross brought the state court action against Clark and the Transit Company. A verdict assessing damages in favor of each plaintiff was returned, the verdict further making an apportionment of the damages 90% against Clark and 10% against the Transit Company. The Transit Company satisfied its portion of judgments entered on the verdict and is not a party to the present action. Similarly, we are not here concerned with the judgment in favor of Patricia Ross.

Throughout most if not all of the settlement negotiations prior to trial representatives of the present defendant, Clark's insurer, urged a want of actionable negligence on his part. Clark subsequently testified (in the present action) that he went into that trial with the understanding that the defense would be want of negligence on his part, and that the Transit Company was solely responsible for the collision.

During pretrial negotiations and proceedings Clark had been represented by personal counsel and by an insurance company attorney, but on the day of trial another of the defendant insurance company's lawyers appeared as sole trial counsel. On that day he filed an amended answer in which it was alleged that Clark's three passengers assumed the risk of riding with him, and the case proceeded through trial on that defense. As will be hereinafter more fully indicated, not only was the position that the accident was solely caused by the Transit Company abandoned but every effort was made to put Clark in as bad a light as possible, his trial attorney claiming that he had been drinking and was driving recklessly. Clark was not advised of this change in defense and did not agree to it either prior to or during the trial. Similarly, the change of defense was not discussed with Clark's personal attorney, and he had not read a copy of the amended complaint with which he had been provided.

The limit of the policy issued by the defendant providing coverage to Clark was $10,000 and that entire sum (after payment of a small amount in settlement of two bus passengers' claims) was applied on the Detenber, Townsend and Ross judgments. After the payment of such sums, and of those paid by the Transit Company, there remained an unpaid balance in excess of $24,000 on each of the judgments favoring Detenber and Townsend. In exchange for a complete release as to these unpaid balances, Clark assigned to the plaintiffs in the state court action and here his claim against the defendant for having acted without good faith and in bad faith to him in the state court trial. They brought action in the District Court, leading ultimately to a filing of crossed motions for summary judgment. Plaintiffs appeal from the overruling of their such motion, and from the sustaining of defendant's motion and entry of judgment thereunder.

There can be no doubt of the relentlessness of the attack made upon Clark during the state court trial by the insurance company attorney ostensibly defending him.[1] In a chambers conference prior to the opening of that trial, he made this statement: "The sole defense available

---

* Honorable Noel P. Fox, United States District Judge for the Western District of Michigan, sitting by designation.

1. Indeed, in his argument in this Court the same lawyer made no claim to the contrary.

to the Clark boy in this case is the defense of assumed risk, and if [plaintiffs' counsel] doesn't prove, I am going to prove that these young people got in the car, they knew that the driver was drinking, they knew he had done it on other occasions, that. they went down the street and actually had physical possession of whiskey in the back. I am going to produce a witness that saw them driving erratically, weaving, at 50 miles an hour, they struck a parked car approximately nine blocks from the scene of this accident, * * * they didn't stop after having that accident, but they fled from the scene of that accident to the scene of this one, and I say to you that when young people of the age 15 and 17, of that age, under the law with the Court of Appeals, when they get into a car in which there is drinking—there is no claim this young man was drunk, but I have got a drinking case—when the car is being driven in a reckless manner, and riding in that car, and I don't know what is more reckless than hitting a car and keeping on going, and I will say to you they assume the risk."

In a course of action consistent with his Chambers statement, defense counsel throughout trial, by examination, cross-examination and final argument stressed not only that negligence on Clark's part proximately resulted in the principal accident, but also his negligent operation prior thereto. He also permitted evidence of Clark's conviction on a plea of guilty of voluntary manslaughter as a result of the death of the Detenber and Mattingly boys to be received in evidence without objection or explanation. This apparently was in contravention of an agreement with Clark's personal attorney, under which it was agreed that Clark would have an opportunity to explain this plea if it were proven.

No satisfactory explanation has ever been offered concerning the failure of the present defendant's attorney to fully discuss with his then client, Clark, the alternative defenses available to him and the significance of the filing on the day of trial of the amended answer—or to even advise him of the fact of such filing. While such failure is felt by this Court to be reprehensible, our considerations in the present situation must be directed to legal, not ethical, issues. We emphasize the fact that nothing stated in the course of this opinion is to be read as condoning counsel's lack of communication to his client.

The first of the two legal issues is whether the defendant insurance company's attorney is guilty of bad faith in his representation of Clark, the company's insured. The record of the trial in the state court clearly establishes that prior to trial the insurance company offered settlement in the full amount of its coverage ($10,000.00), and that this offer was repeated during trial. Thus it might first appear that it had nothing to gain and could only incur expense by proceeding through trial, and that its attorney's only objective was to protect Clark by keeping the verdict as close as possible to the policy limit. As reflection will quickly indicate, this is not the whole story and it may be at least as plausibly argued that the assumption of risk defense was adopted as the only course which could benefit the insurance company; specifically, it could save the company its $10,000. On the other hand, it was a defense more fraught with danger for Clark than for the company, since if it found liability a jury inflamed by accusations of his carelessness and of driving while under the influence of alcohol would scarcely incline to a niggardly verdict. Further, having his own lawyer join with those for the plaintiffs and the Transit Company in placing such blame on him could have played a part in the jury's determination that Clark should pay 90% of the damages.

■■ Persuasive as such considerations might be in other jurisdictions, the law of Kentucky on the point at issue seems to have been clearly established in American Surety Co. v. J. F. Schneider & Son, 307 S.W.2d 192 (Ky.1957). Therein the highest court of Kentucky once more recognized the duty of an insurer to exercise the upmost good

faith and the corollary that action in bad faith or failure to exercise good faith is sufficient to create liability on the part of the insurer for the excess of a verdict beyond policy limits, but that court specifically held that: "Mere errors of judgment are not sufficient to constitute bad faith." Id. at 195. Again, the court in Harrod v. Meridian Mutual Ins. Co., 389 S.W.2d 74, 76 (Ky.1964), stated that bad faith "is not simply bad judgment. It is not merely negligence. * * * It implies conscious doing of wrong. * * * It partakes of the nature of fraud." See also, Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S.W.2d 777 (1932).

Although capable of being discounted as self-serving declarations, in fairness to defense counsel, since the negative aspects to Clark of the defense adopted have been emphasized, certain of his statements should not go unnoticed. Defense counsel initially and repeatedly stated that in his professional opinion assumption of risk (contributory negligence) was the best and only defense available to Clark, and in other ways, such as in connection with Clark's driving rights, he made pointed effort to afford protection.

It was the view of the District Court, as expressed in its Judgment, that "In view of the substantial evidence of drinking on the part of * * * Clark, and of the introduction in evidence in the state court action of his plea of guilty to a criminal charge of negligent homicide, the defense of assumed risk asserted by counsel for the American Universal Insurance Co. to the claims of the passengers in the Clark automobile was a proper and justifiable defense to be asserted and, if accepted by the jury in the state court action, was calculated to relieve * * * Clark of any responsibility or liability." Citing Georgia Casualty Co. v. Mann, supra, and American Surety Co. v. J. F. Schneider & Son, supra, District Judge Henry L. Brooks concluded that a finding of bad faith or negligence in the conduct of the state court action by the insurance company

counsel was not justified, and that conclusion will be affirmed.

In view of this determination it is not necessary to here make disposition of the remaining issue. It deals with the determination of damages, and we observe only that it is difficult in the extreme to fathom how Clark could sustain the burden of demonstrating that he would have had better chances had the "no negligence" defense been adhered to, and if so of establishing the difference in terms of monetary damages.

Affirmed.